UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION

| | |
|---|---|
| HUAKUN KE,<br>Petitioner,<br>v.<br>JAMES JANECHA, et al.,<br>Respondents. | No. 5:26-cv-04342-JDE<br><br>ORDER REGARDING PETITION |

## I.
## PROCEEDINGS

On August 2, 2026, Huakun Ke ("Petitioner"), through counsel, filed a Petition for Writ of Habeas Corpus challenging her detention by immigration authorities and seeking her immediate release. Dkt. 1 ("Petition" or "Pet."). Petitioner contends her detention without pre-deprivation notice and a hearing violated her procedural due process rights and is not reasonably related to any legitimate purpose violating her substantive due process rights.

On August 10, 2026, Respondents filed an Answer to the Petition. Dkt. 7 ("Ans."). Petitioner filed a Reply the same day. Dkt. 8 ("Reply").

For the reasons discussed below, the Petition is denied.

## II.
## BACKGROUND

Petitioner is a native and citizen of the People's Republic of China. Pet. ¶ 20. She was admitted to the United States on January 8, 2022 on a B-1/B-2 visa. Id. ¶ 21. Her visa expired on August 8, 2023. Ans., Exh. 1. Petitioner filed an application for asylum on June 13, 2023. Pet. ¶ 22; Ans., Exh. 1. Petitioner attests that her asylum application is pending (Dkt. 1-2, Declaration of Petitioner ["Pet. Decl."] ¶ 5), but Respondents have presented a true and correct copy of the signed Form I-213 reflecting it was denied on July 10, 2026. Ans., Exh. 1. Petitioner was served with a Notice to Appear the same day. Id.

Seventeen days later, on July 27, 2026, Petitioner was arrested at the airport pursuant to a warrant and served with a Notice of Custody Determination for overstaying her visa. Pet. ¶¶ 25-26; Ans., Exh. 1. Petitioner does not indicate whether she has requested a bond hearing, but Respondents acknowledge Petitioner appears to be entitled to request and receive an initial bond hearing. See Ans. at 2.

## III.
## DISCUSSION

A petitioner seeking habeas relief must demonstrate that she is in custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241(c)(3). The protections of habeas corpus extend to those in immigration detention. See Lopez-Marroquin v. Barr, 955 F.3d 759, 759 (9th Cir. 2020); Nadarajah v. Gonzales, 443 F.3d 1069, 1075-76 (9th Cir. 2006). "[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order." Lopez-Marroquin, 955 F.3d at 759.

"It is the petitioner's burden to prove [her] custody is in violation of the Constitution, laws[,] or treaties of the United States." Snook v. Wood, 89 F.3d

605, 609 (9th Cir. 1996) (as amended). Petitioner has failed to carry her burden to prove that her current custody violates her federal rights, entitling her to immediate release.

**A. Procedural Due Process Claim**

Petitioner contends her procedural due process rights were violated by her detention without notice, a hearing, or review by a neutral decision-maker. Pet. ¶ 52. The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. U.S. Const. amend. V. Due process rights extend to noncitizens present in the United States, including those subject to final removal orders. Zadvydas v. Davis, 533 U.S. 678, 693-94 (2001). Due process requires that an individual be afforded notice and opportunity to be heard "at a meaningful time and in a meaningful manner." See Mathews v. Eldridge, 424 U.S. 319, 333, 348 (1976) (citation omitted). The Court must consider: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Id. at 335.

Petitioner contends she had a constitutionally protected liberty interest in remaining free from confinement, arguing that she "was a domestic air traveler with lawful admission, work authorization, four and a half years of settled residence, and a pending asylum application." Pet. ¶¶ 52-53. However, she was not lawfully in the United States at the time of her arrest. She overstayed her visa by almost three years at the time of her detention and she was advised at the time of her arrest that she was being detained for overstaying her visa. Further, there is a dispute regarding whether Petitioner has a current lawful path to admission as Respondents contend her asylum application was denied.

Petitioner claims that her liberty interest arises from her physical freedom and the government's decision to permit it, arguing the government decided not to detain her repeatedly. Reply at 5. However, as noted, Respondents present evidence that Petitioner was taken into custody a mere seventeen days after her asylum application was denied and removal proceedings were commenced, undermining any assertion that she had a liberty interest at the time of her arrest based on the government's "decision" not to detain her.

Even assuming a cognizable liberty exists, the government has a "strong interest" in enforcing the immigration laws (Rodriguez Diaz v. Garland, 53 F.4th 1189, 1208 (9th Cir. 2022)), and Petitioner has not shown that a prompt post-detention bond hearing, where she is afforded the opportunity to challenge her detention, is inadequate to safeguard that liberty interest and mitigate the risk of erroneous deprivation. Petitioner was detained at the airport on her way to Hawaii (Ans., Exh. 1), two weeks after removal proceedings commenced. She has been detained for less than a month. She was advised at the time of her arrest of the basis for the removal proceedings in writing. Petitioner does not allege she has ever requested a bond hearing and nothing prevents her from requesting one. Petitioner claims that the risk of error is compounded here because there is "a genuine dispute over notice itself," arguing that she swore "under penalty of perjury that she received no such notice and that her 'asylum application is pending at [the] asylum office." Reply at 7. She faults Respondents for failing to produce a denial notice, Notice to Appear, or a proof of service. Id. However, Petitioner has the burden of demonstrating entitlement to habeas relief. She attests that she "didn't get asylum interview notice till today," without further explanation, and her "asylum application is pending at asylum office." See Pet. Decl. ¶ 5. Respondents have produced contrary evidence showing that she was served with a Notice to Appear and her asylum application was denied on July 10,

2026. To the extent she disputes whether her asylum application has been denied, this is an issue more appropriately addressed in the immigration proceedings in the first instance, not in the district court, particularly given that a bond hearing remains available to her should she exercise that right.

Based on the foregoing, Petitioner has not shown her procedural due process rights were violated such that she is entitled to immediate release.

**B. Substantive Due Process Claim**

Petitioner further contends that her detention is not reasonably related to any legitimate purpose and therefore violates substantive due process. Pet. ¶ 56. As to this claim, the Court agrees with Respondents that Petitioner has failed to exhaust her administrative remedies.

The parties do not appear to dispute that Petitioner is detained under 8 U.S.C. § 1226(a). When the United States commences removal proceedings against a noncitizen, the noncitizen "may be arrested and detained pending a decision on whether the [noncitizen] is to be removed from the United States." 8 U.S.C. § 1226(a). Although the Department of Homeland Security ("DHS") makes the initial custody determination, noncitizens subject to Section 1226(a) can request bond hearings before an immigration judge and further review with the Board of Immigration Appeals. Rodriguez Vazquez v. Bostock, -- F.4th --, 2026 WL 2196424, at *5 (9th Cir. July 30, 2026). "A [Section] 1226(a) detainee will be released on bond if [she] demonstrates by a preponderance of the evidence that [she] is not a flight risk or a danger to the community." Id.

"Federal prisoners are required to exhaust their federal administrative remedies prior to bringing a petition for a writ of habeas corpus in federal court." Martinez v. Roberts, 804 F.2d 570, 571 (9th Cir. 1986) (per curiam); see also Ward v. Chavez, 678 F.3d 1042, 1045 (9th Cir. 2012). The exhaustion requirement is not jurisdictional, but prudential exhaustion may be required when "(1) agency expertise makes agency consideration necessary to generate

a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." Hernandez v. Sessions, 872 F.3d 976, 988 (9th Cir. 2017) (citation omitted). "When a petitioner does not exhaust administrative remedies, a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies, unless exhaustion is excused." Leonardo v. Crawford, 646 F.3d 1157, 1160 (9th Cir. 2011) (as amended).

Exhaustion may be waived where administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be futile, irreparable injury would result, or the administrative proceedings would be void. Laing v. Ashcroft, 370 F.3d 994, 1000 (9th Cir. 2004); Ward, 678 F.3d at 1045. "The party moving the court to waive prudential exhaustion requirements bears the burden of demonstrating that at least one of [the] Laing factors applies." Chavez v. Noem, 801 F. Supp. 3d 1133, 1139 (S.D. Cal. 2025) (citation omitted).

Prudential exhaustion applies here. Petitioner asserts multiple arguments as to why her detention is not reasonably related to any legitimate purpose, but there has been no opportunity for the application of agency expertise in relation to a bond request. Petitioner, who is currently represented by counsel, presents no evidence that these factual issues cannot be addressed and corrected in the context of a bond hearing. Petitioner raises factual issues that can and should be developed and weighed by an immigration judge in the first instance. Further, waiving exhaustion in this instance would encourage others to deliberately bypass the established administrative scheme, which contemplates bond determinations by immigration judges, not the district court, in the first instance. Here, the only reason why an immigration judge

has not made a merits determination for purposes of deciding whether to grant bond is Petitioner's apparent failure to request a hearing. In addition, the outcome of such bond hearing by an immigration judge may provide Petitioner the relief sought in this proceeding and eliminate the need for judicial review.

Petitioner has not shown exhaustion should be waived here. She argues that "[a]n Immigration Judge has no authority to adjudicate whether DHS's detention of [her] without pre-deprivation process violated the Fifth Amendment, and no authority to order the constitutional remedy she seeks." Reply at 10. At least as to her substantive due process claim, an immigration judge is well equipped to determine whether a noncitizen detainee is a flight risk or danger to the community. As noted, the administrative scheme contemplates bond hearings before immigration judges. Petitioner has not shown that exhaustion of her administrative remedies would be futile as to her substantive due process claim.

Finally, to the extent Petitioner claims she will suffer irreparable harm by remaining detained while she pursues a bond hearing (Reply 10), such argument is unpersuasive, particularly given that she does not deny she could have, but has never requested, a bond hearing, and does not seek one in this Court, which typically orders bond hearings to be held within seven days. Any delay at this point is due to Petitioner's own failure to request a hearing.

Accordingly, Petitioner has not shown waiver of the exhaustion requirement is warranted here. See Kim v. Mullin, 2026 WL 948347, at *4 (W.D. Wash. Apr. 8, 2026) (dismissing petition where petitioner never requested a bond redetermination hearing); Chavez v. Immigr. & Customs Enf't Field Off. Dir., 2024 WL 1661159, at 3 (W.D. Wash. Jan. 25, 2024) (denying request for court-ordered bond hearing for failure to exhaust where petitioner withdrew and never renewed a request for a bond redetermination hearing), adopted by 2024 WL 1658973 (W.D. Wash. Apr. 17, 2024).

## IV.

## ORDER

IT IS THEREFORE ORDERED that Judgment be entered denying the Petition (a) with prejudice as to Count One; and (b) without prejudice as to Count Two; however, nothing herein precludes Petitioner from asserting future claims, in an appropriate forum, based on a change in circumstances.

Dated: August 17, 2026 ____

JOHN D. EARLY
United States Magistrate Judge